**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>　　　　　　　　Plaintiff,<br>　- against -<br><br>HOMETRUST MORTGAGE COMPANY,<br><br>　　　　　　　　Defendant. | Adversary Proceeding<br><br>No. 14-02392 |

**MEMORANDUM DECISION DENYING MOTION TO DISMISS**

A P P E A R A N C E S:

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
　By:　William A. Maher, Esq.
　　　　Adam M. Bialek, Esq.

*Attorneys for Lehman Brothers Holdings Inc.*

FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
　By:　Derek L. Wright, Esq.

AMERICAN MORTGAGE LAW GROUP
75 Rowland Way
Suite 350
Novato, CA 94945
　By:　Tracy L. Henderson, Esq.

*Attorneys for Hometrust Mortgage Company*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion (the "Motion") of Hometrust Mortgage Company ("Hometrust") to dismiss the complaint (the "Complaint") of plaintiff Lehman Brothers Holdings Inc. ("LBHI") for failure to state a claim on which relief may be granted. By the Complaint, LBHI requests a declaratory judgment that LBHI's claim for contractual indemnification accrued upon settlement of LBHI's liability to the Federal National Home Mortgage Association ("Fannie Mae") on or about January 22, 2014. Hometrust argues that the Complaint should be dismissed because LBHI's claim for contractual indemnification is time-barred as a matter of law.

By the Complaint, LBHI seeks a declaratory judgment that its claim to recover losses it incurred as a result of two allegedly defective mortgage loans (together, the "Loans") originated and sold by Hometrust to LBHI affiliate Lehman Brothers Bank, FSB ("LBB") at various times in 2006 and 2007 is timely. The Loans were sold pursuant to a written agreement, dated February 14, 2005, between Hometrust and LBB entitled "Loan Purchase Agreement (Servicing Related Transactions)" (the "LPA"), which LPA incorporates the terms and conditions of the Seller's Guide of Aurora Loan Services LLC (the "Seller's Guide" and, together with the LPA, the "Agreement"). LBB assigned its rights under the Agreement to LBHI, which, in turn, sold the Loans to Fannie Mae. Fannie Mae later discovered that the Loans allegedly breached certain of the representations and warranties made by Hometrust within the Agreement and filed a claim against LBHI for losses it suffered on the Loans. LBHI settled Fannie Mae's claim, which settlement was approved by the Court on January 31, 2014, [Case No., 08-13555 ECF No. 42420], and is effective as of January 22, 2014. LBHI contends that the settlement triggered its right to assert a contractual indemnification claim against Hometrust under the Agreement.

2

Hometrust asserts that LBHI's claim is simply a breach of contract claim based on Hometrust's alleged breaches of the representations and warranties of the Agreement, and is not a separate claim for contractual indemnification. Hometrust therefore argues that LBHI's claim accrued at the time of Hometrust's alleged breach of the representations and warranties -- that is, in 2006 and 2007, when Hometrust sold the Loans to LBB. Accordingly, Hometrust argues that because the Complaint was not filed until October 31, 2014, more than seven years after the Loans were sold to LBB, LBHI's claim is time-barred by New York's six-year statute of limitations for breach of contract actions.

On January 12, 2015, Hometrust filed a motion to withdraw the reference with the United States District Court for the Southern District of New York, arguing that this matter is a non-core state law contract dispute. The motion to withdraw the reference was assigned to Judge Paul A. Englemayer as Case No. 15-cv-304. Judge Engelmayer denied the motion to withdraw the reference by an order dated February 13, 2015. The matter has been fully briefed and the Court heard extensive oral argument on February 17, 2015.[1]

The Court entered an order denying the Motion on March 31, 2015 [ECF No. 28]. The order noted that this written decision explaining the Court's reasoning would follow.

**STANDARD**

Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, which incorporates Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief may be granted. *See* FED. R. BANKR. P. 7012(b). In reviewing a motion to dismiss under Rule 12(b)(6),

---

[1] Concurrent with oral argument on this matter, the Court also heard oral argument on defendant LHM Financial Corporation's motion to dismiss the complaint in *LBHI v. LHM Financial Corp.*, Adv. Proc. No. 14-02393 (SCC). LHM Financial Corporation's motion to dismiss was based on the same theory as the Motion in this matter and the parties in this matter and *LBHI v. LHM Financial Corp.* were represented by the same counsel.

the Court accepts the factual allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). To survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the factual allegations in a complaint must be supported by more than mere conclusory statements. *Twombly*, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).

A court may dismiss a complaint unless a plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). Therefore, the appropriate inquiry "is not whether a plaintiff is likely to prevail, but whether [he] is entitled to offer evidence to support [his] claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (citations omitted).

## **BACKGROUND**

### **Hometrust Originates the Loans and Sells the Loans to LBB**

Prior to its bankruptcy, and at all relevant times, LBHI engaged in the purchase and sale of mortgage loans directly or through affiliates, including LBB, and then sold the loans to third parties, including Fannie Mae. Complaint ¶ 11. Hometrust engages, and at all relevant times engaged, in the origination and sale of mortgage loans. *Id*. ¶ 12. Over the course of the years 2006 and 2007, Hometrust sold the Loans to LBB pursuant to the terms of the Agreement. The Loans are:

- Loan ****9647, sold on May 31, 2006; and

4

- Loan ****4238, sold on February 26, 2007. *Id.* ¶¶ 17-18.

LBB assigned to LBHI all of its rights and remedies under the Agreement pertaining to the Loans. *Id.* ¶ 19. LBHI subsequently sold the Loans to Fannie Mae. *Id.* ¶ 2

**Fannie Mae's Claim against LBHI for Breach of**
**Hometrust's Representations under the Agreement**

Pursuant to the Agreement, Hometrust made a number of representations, warranties, and covenants concerning the accuracy and preparation of the loan documentation and Hometrust's origination and processing of the Loans. *See e.g.*, Seller's Guide [ECF No. 1, Ex. B] §§ 703(1), 703(8), 703(12), 703(21). In instances in which Hometrust served as underwriter of loans, Hometrust made additional representations that such underwriting would be in strict compliance with the underwriting guidelines in the Seller's Guide and would be performed with the same care and diligence as an experienced underwriter performing such duties in the industry and, in any event, with no less care and diligence than if Hometrust was performing underwriting for its own account. *See* Seller's Guide [ECF No. 1, Ex. B] § 717.

The Complaint alleges that Fannie Mae discovered breaches of the representations, warranties, and/or covenants in the Loans. Complaint ¶ 29. The Complaint further alleges that LBHI confirmed that Hometrust breached its representations, warranties, and/or covenants under the Agreement, causing LBHI's loss. *Id.* ¶ 30. Finally, the Complaint specifically alleges breaches by Hometrust with respect to each of the Loans:

- With respect to Loan ****9647, the Complaint alleges misrepresentations in the loan documents related to the borrower's other debt obligations that purportedly constituted breaches of the representations, warranties, and/or covenants of sections 703(1) and 703(12) of the Seller's Guide. *See id.* ¶¶ 31-32.

- With respect to Loan ****4238, the Complaint alleges misrepresentations in the loan documents related to the borrower's income and employment that purportedly constituted breaches of the representations, warranties, and/or covenants of sections 703(1) and 703(12) of the Seller's Guide, and failure to comply with proper underwriting procedures

5

and the loan program profile that purportedly constituted breaches of the representations, warranties, and/or covenants of sections 703(8), 703(21), and 717(1) of the Seller's Guide. *See id*. ¶¶ 33-36.

On September 22, 2009, Fannie Mae filed proofs of claim in LBHI's bankruptcy proceeding to recover losses on the allegedly defective mortgage loans sold to it by LBHI. Complaint ¶ 37. LBHI settled Fannie Mae's claim, which settlement the Court approved on January 22, 2014 [Case No., 08-13555 ECF No. 42153] (the "Fannie Mae Settlement"). Pursuant to the Fannie Mae Settlement, Fannie Mae received an allowed general unsecured claim against LBHI in the amount of $2.15 billion. The Complaint alleges that it was Hometrust's breaches of the representations, warranties, and/or covenants made under the Agreement that caused LBHI to compensate Fannie Mae, pursuant to separate agreements between LBHI and Fannie Mae that were co-extensive with the representations, warranties, and/or covenants contained in the Agreement, and, ultimately, pursuant to the Fannie Mae Settlement. *See* Complaint ¶¶ 29, 37.

**The ADR Procedures and Hometrust's Refusal to Reimburse LBHI**

On June 24, 2014, the Court entered Alternative Dispute Resolution Procedures Order for Indemnification Claims of The Debtors Against Mortgage Loan Sellers [Case No., 08-13555 ECF Nos. 44846 & 45277] (the "ADR Order"). On July 17, 2014, LBHI sent a letter to Hometrust seeking indemnification for losses suffered by LBHI in connection with the Fannie Mae Settlement. *See* [ECF No.1, Ex. C]. Hometrust responded to the letter with a refusal to indemnify LBHI, asserting that LBHI's claim is barred in its entirety by the applicable statute of limitations. Complaint ¶ 41. LBHI states in its opposition to the Motion that numerous originators and other third parties have refused or may refuse to engage in the substantive negotiations envisioned by the ADR Order on the basis that such parties are joining Hometrust in asserting that LBHI's claims for indemnification are time-barred.

6

**DISCUSSION**

LBHI argues that its claim is for contractual indemnification under the Agreement; LBHI asserts that, under New York law, and, specifically, under *McDermott v. City of New York*, 406 N.E.2d 460 (N.Y. 1980) and its progeny, such a claim for indemnification does not accrue until liability to a third party is fixed or payment is made. *See McDermott*, 406 N.E.2d at 462 (citations omitted) ("since the cause of action [for indemnification] is not complete until loss is suffered, familiar Statute of Limitations principles dictate that accrual occurs upon payment by the party seeking indemnity"); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 188 (2d Cir. 2014) (citations omitted) ("a claim for contractual indemnification only accrues once the indemnitee has suffered a loss, *i.e.*, made a payment"). Accordingly, LBHI argues that the six-year statute of limitations on its claim did not begin running until January 22, 2014, the date of the Fannie Mae Settlement.

In response, Hometrust argues that the Agreement does not provide for a separate claim for contractual indemnification, but makes indemnification but one of a suite of available "remedies" for a breach of the Agreement's representations and warranties. Hometrust submits that *McDermott* and its progeny are inapposite because, while such cases found an implied indemnification right in a tort context, there can be no implied indemnification right in a contract context. Hometrust thus argues that, notwithstanding LBHI's label of its claim as one for "contractual indemnification," there is no such right under the Agreement and the Court cannot read such a right into the Agreement. If Hometrust's interpretation of the Agreement is correct, and indemnification is simply a remedy under the Agreement, indemnification cannot serve as a basis for LBHI's claim. *See Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472, 476-77 (S.D.N.Y. 2014) (citations

7

omitted) (holding that New York law "does not recognize pre-suit remedial provisions in contracts as constituting separate promises which can serve as the basis for independent causes of action."). LBHI's claim would thus be a simple breach of contract claim based on Hometrust's alleged breach of the Agreement's representations and warranties, which claim would have accrued, under New York law, when LBHI had a legal right to demand payment, as of the date the Agreement was breached. *See e.g.*, *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 967 N.E.2d 1187, 1190 (N.Y. 2012); *Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*, No. 12 Civ. 6168 (MGC), 2014 WL 1259630 at *2 (S.D.N.Y. Mar. 27, 2014) ("[I]t is well settled that the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered." (quoting *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997)). Simply stated, under Hometrust's theory, the Agreement would have been breached with respect to each allegedly defective Loan when Hometrust sold it to LBB, LBHI's assignor, (i.e., in 2006 and 2007), and thus LBHI's claim is time-barred. *See* N.Y. C.P.L.R. § 213(2) (statute of limitations for breach of contract claims is six years).

The disposition of the Motion turns on an interpretation of the Agreement and, specifically, whether the Agreement gives LBHI, as assignee of LBB's rights under the Agreement, a contractual indemnification claim against Hometrust, as seller of the Loans, that is separate from a time-barred claim for a breach of the Agreement's representations and warranties.

**The Parties' Textual Interpretations of the Agreement**

Not surprisingly, LBHI and Hometrust each strenuously argue that a plain reading of the relevant portions of the Agreement mandates a finding in its favor. LBHI argues that a right to a

8

separate claim for indemnification is explicitly set forth in section 711 of the Seller's Guide, which is entitled "Indemnification and Third Party Claims" and provides, in relevant part:

> In addition to any repurchase and cure obligations of Seller, and any and all other remedies available to Purchaser under this Seller's Guide and the Loan Purchase Agreement, Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.

Seller's Guide [ECF No. 1, Ex. B] § 711.

LBHI argues that the introductory language makes clear that the rights delineated in section 711 are "in addition to" all other remedies given to the Purchaser under the Agreement in the event of a breach of the Seller's representations and warranties, including the remedies granted to the Purchaser pursuant to section 710 of the Seller's Guide, entitled "Repurchase Obligation."

By contrast, Hometrust argues that the Agreement makes clear that indemnification is a "remedy" under the Agreement, and not a separate right of action. With respect to section 711 of the Seller's Guide, Hometrust's interpretation is that the introductory language of section 711 -- "[i]n addition to any repurchase and cure obligations of Seller, and any and all other remedies available to Purchaser under this Seller's Guide and the Loan Purchase Agreement" -- means that Purchaser's rights under section 711 are grouped with, and therefore the same as, "all other remedies available to Purchaser." Hometrust also asserts that indemnification is a remedy under the Agreement, making much of the fact that indemnification is included in the list of remedies set forth in section 710 of the Seller's Guide, which section provides, in relevant part, that "all of Purchaser's remedies hereunder, including, without limitation, the repurchase obligation with

9

respect to the Mortgage Loan, the purchase obligation with respect to the Mortgaged Property, and the indemnification with respect to any breach of a representation, warranty or covenant…".[2]

**DECISION**

"The objective of contract interpretation is to give effect to the expressed intentions of the parties." *Record Club of America, Inc. v. United Artists Records, Inc.*, 890 F.2d 1264, 1271 (2d Cir. 1989) (citations omitted). Courts should, where possible, interpret a contract in a way that does not place undue emphasis upon particular words or phrases and gives effect to all words chosen by the parties. *See In re MF Global Inc.*, 496 B.R. 315, 319 (S.D.N.Y. 2013) ("Courts should read the integrated contract 'as a whole to ensure that undue emphasis is not placed upon particular words and phrases and to safeguard against adopting an interpretation that would render any individual provision superfluous.'") (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010)).

Hometrust's interpretation of the Agreement is at odds with these fundamental principles of contract interpretation in several respects. It does not give effect to all of the Agreement's provisions, specifically section 711 of the Seller's Guide, and it places undue emphasis on the inclusion of the word "indemnification" in section 710 of the Seller's Guide, a section that otherwise is addressed to the remedies of the contracting parties and not third parties.[3] As Hometrust points out, "indemnification" is listed as a "remedy" in section 710 of the Seller's

---

[2] The full text of the last paragraph of section 710 of the Seller's Guide provides:
All of Purchaser's remedies hereunder, including, without limitation, the repurchase obligation with respect to the Mortgage Loan, the purchase obligation with respect to the Mortgaged Property, and the indemnification with respect to any breach of a representation, warranty or covenant (or any other Event of Default), shall exist regardless of (i) the dates of Purchaser's discovery and notice to Seller of the breach and Purchaser's demand for any remedy and (ii) any limitation or qualification of a representation or warranty as being made "to Seller's knowledge" or "to the best of Seller's knowledge" or any similar qualification relating to the knowledge of Seller. Notwithstanding any other provision of the Seller's Guide or Loan Purchase Agreement to the contrary, Seller shall remain liable for all remedies hereunder, even if Purchaser discovers a breach after the Mortgage Loan is liquidated in foreclosure.
Seller's Guide [ECF No. 1, Ex. B] § 710.

[3] *See e.g.*, *Aurora Commercial Corp. v. Standard Pac. Mortg.*, No. 12-cv-3138-WJM-KLM, 2014 WL1056383 (D. Colo. March 19, 2014).

10

Guide. If, as Hometrust urges, section 711 provides a second identical remedy, albeit under the heading "Indemnification and Third-Party Claims," it is difficult to articulate a distinction between the remedy of indemnification in section 710 of the Seller's Guide and the remedy of indemnification in section 711 of the Seller's Guide. If there is no distinction, section 711 of the Seller's Guide adds nothing to the rights and obligations the parties have assumed pursuant to section 710 of the Seller's Guide; accordingly, it is wholly superfluous and without effect. Hometrust made no attempt to draw such a distinction in its papers; moreover, counsel to Hometrust was unable to articulate a distinction at oral argument. *See* February 17, 2015 H'rg Tr. 34:5-35:8.

Hometrust's interpretation of the Agreement requires that the Court find that the inclusion of the word "remedies" in section 711 of the Seller's Guide transforms section 711 into a section 710 pre-suit remedial provision. As noted by LBHI, Hometrust's interpretation of section 711 of the Seller's Guide places undue emphasis on the word "remedies," and ignores the fact that the sentence containing the word "remedies" is introducing the rights of the Purchaser under section 711 of the Seller's Guide as "in addition to…any and all other remedies available to Purchaser under this [Agreement]." This context suggests that the rights under section 711 of the Seller's Guide are of a different character than the other remedies under the Agreement. Sections 710 and 711 of the Seller's Guide must be read together to provide the Purchaser (i) rights under section 710, which rights include indemnification, and (ii) additional rights under section 711, of a different character than those given under section 710, including rights exercisable by third parties who were not parties to the Agreement in the first instance.[4]

---

[4] Hometrust's interpretation of the Agreement also runs counter to market expectations and practices, as evidenced by market behavior. Specifically, Hometrust's interpretation of the Agreement would require the Court to find that sophisticated market participants did not, and could not, contract to account for the real risk that a loan re-seller's right to indemnification from a loan originator could become time-barred. At oral argument, Hometrust's counsel

11

Hometrust invites the Court to view (i) the failure of LBB and LBHI to "draft around" the statute of limitations risk when it drafted the Agreement, (ii) the failure of LBHI to preserve its rights in its disposition of the Fannie Mae claims, and (iii) the failure of the sophisticated participants in the broader securitization market to account for this risk in loan re-sale agreements similar to the Agreement as "bad business decisions." *See* February 17, 2015 H'rg Tr. 26:19-28:2. Far more likely is that LBB and LBHI behaved in accordance with the broader market's practice and expectations; namely, that the statute of limitations on a loan re-seller's right to indemnification from a loan originator is part of a package of bargained-for rights and should be available when the re-seller makes a payment to a third party. Otherwise, the detailed and extensive documents that comprise the Agreement and countless others like it are replete with indemnification rights that are, at best, fleeting, and at worst, illusory. *See generally* February 17, 2015 H'rg Tr. 15:15-16:19; 23:5-23:16; 26:19-28:2; 39:4-42:15.

**Case Law Interpreting the Agreement**

---

confirmed that, under its interpretation of the Agreement, a party that subsequently sold the Loans and assigned its rights under the Agreement to a third-party (i) would be barred from making a claim against Hometrust for indemnification before the statute of limitations had run unless such party had actually made a payment to the third party, and (ii) could not assert a claim against Hometrust for indemnification if payment to the third party was made after the statute of limitations had run. Counsel for Hometrust thus confirmed that, if LBHI wanted to assert an indemnification claim against Hometrust one day before the statute of limitations had run but prior to LBHI making payment to Fannie Mae, such suit would be premature and, if such payment were made two days later, after the statute of limitations had run, LBHI's claim for indemnification would be time-barred. *See* February 17, 2015 H'rg Tr. 26:19-27:15. If the Agreement, and similar loan purchase agreements that incorporate similar seller's guides were interpreted this way, it would create a risk in re-selling purchased loans to the extent that a re-seller would be forced to rely on its counterparty identifying and demanding payment for any breaches of the representations and warranties made by the loan originator prior to the expiration of the statute of limitations if the re-seller's indemnification rights against the loan originator were to have any meaning. Given the relevance of such a risk to the securitization industry, the market might expect to see provisions accounting for this risk in sale agreements between re-sellers and parties like Fannie Mae, or perhaps see re-sellers making different representations, warranties, and covenants in such agreements than an originator would make in a sale agreement between an originator and a re-seller. Instead, a re-seller generally, and, as is the case here, makes representations, warranties, and covenants that are coextensive with the representations, warranties, and covenants made by the originator, and there is no separate provision dealing with the risk that an indemnification right held by the re-seller could be meaningless if the counterparty does not identify and demand payment for any breaches of the representations and warranties made by the loan originator prior to the expiration of the statute of limitations. The parties could have added an outside indemnification date but did not. *See infra*, n. 8.

12

While the parties have cited a number of cases in support of their arguments, relatively few of those cases actually consider whether a third-party claim for contractual indemnification exists under the Agreement and fewer still consider the issue in the amount of depth required to dispose of the issues raised by the instant Motion.

With respect to decisions interpreting the Agreement, Hometrust principally relies upon three cases from the District of Colorado -- *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*, No. 13-cv-0092-WJM-BNB, 2014 WL 4269118 (D. Colo. Aug. 28, 2014) ("Universal IV")[5]; *Lehman Bros. Holdings, Inc. v. First Calif. Mortg. Corp.*, No. 13-cv-02113-CMA-KMT, 2014 WL 3843803 (D. Colo. Aug. 5, 2014) ("First California"); and *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*, No. 13-cv-00093-CMA-MJW, 2014 WL 3843797 (D. Colo. Aug. 5, 2014) ("Universal III"). Hometrust urges that these decisions have interpreted the Agreement and have determined that there is no separate cause of action for indemnification contained therein. Hometrust also placed great emphasis, particularly at oral argument, on *Lehman Bros. Holdings Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189 (W.D. Wash. 2011) ("Evergreen"). None of these cases is persuasive, let alone dispositive, here.

None of *Universal IV*, *First California*, and *Universal III* mentions, let alone analyzes, section 711 of the Seller's Guide or attempts to determine whether it confers a right of action for indemnification separate from "indemnification" under section 710 of the Seller's Guide for breaches of representations, warranties, and/or covenants. Rather, each of these cases contains a conclusory statement that LBHI's claim for indemnification is time-barred. *See*, *Universal IV*,

---

[5] The District Court of Colorado considered a number of cases entitled *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC* over the course of 2014, five of which are relevant here. To attempt to avoid confusion, the Court will refer to them herein as "Universal [Roman numeral]" with the Roman numeral determined by the chronological order in which the decisions were issued. For example, *Universal I* (defined below) was issued on January 27, 2014 and *Universal V* (defined below) was issued on October 9, 2014.

13

2014 WL 4269118 at *3 ("Defendant's alleged failure to repurchase the Storemski Loan and to indemnify [LBHI] for its losses from its payment to Freddie Mac are merely pre-suit contractual remedies."); *First California* 2014 WL 3843803 at *2 ("[LBHI]'s argument that the statute of limitations accrual date was not triggered until it indemnified Fannie Mae has been rejected by this Court."); *Universal III*, 2014 WL 384397 at *1 ("[LBHI]'s argument that the statute of limitations accrual date was not triggered until it indemnified Freddie Mac has been rejected by this Court."). In support of these conclusions, each decision refers to other cases in which the court, or another court in the District of Colorado, had considered a "similar" fact pattern. *See e.g.*, *Universal IV*, 2014 WL 4269118 at *4 ("The Court has previously considered a similar argument in a related case, wherein the same Plaintiff alleged that the defendant's subsequent failure to repurchase the loan constituted a second breach that triggered a new limitations period.") (citing *Aurora Commercial Corp. v. Standard Pac. Mortg.*, No. 12-cv-3138-WJM-KLM, 2014 WL1056383 (D. Colo. March 19, 2014)); *First California*, 2014 WL 3843803 at *1 n.2 ("Moreover, facing a similar fact pattern, another court in this district likewise determined that Plaintiff's claims are barred by [the applicable] statute of limitation" (citing *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 12 F. Supp. 3d 1355 (D. Colo. 2014) ("Universal I")); *Universal III*, 2014 WL 384397 at n. 2 ("Moreover, facing a similar fact pattern, another court in this district likewise determined that Plaintiff's claims are barred by [the applicable] statute of limitation") (citing *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, No. 13-cv-00090-PAB-MJW, 2014 WL 3258409 (D. Colo. July 8, 2014) ("Universal II")).

However, the facts of the cases relied upon in *Universal IV*, *First California*, and *Universal III* cases are not similar to the facts presented to this Court:

14

- In *Aurora Commercial*, relied upon in *Universal IV*, the court rejected the plaintiff's argument that a loan seller's failure to repurchase non-conforming loans on demand was a separate and independent breach of the Agreement that reset the statute of limitations, reasoning that because the plaintiff's right to demand repurchase under section 710 of the Seller's Guide had accrued at origination, the post-origination refusal to repurchase did not have any impact on the statute of limitations. *See Aurora Commercial*, 2014 WL 1056383 at *4-5 ("[T]he statute of limitations begins to run when a cause of action accrues…[t]he first alleged breach of a representation or warranty occurred in December 2006 when the first Subject Loan was originated, thus triggering both Plaintiff's duty to repurchase the Subject Loans and the running of the statute of limitations.") (citing section 710 of the Seller's Guide)). In other words, *Aurora Commercial* (and *Universal IV*) dealt only with the exercise of remedies under section 710 of the Seller's Guide by a party to the original documents; it did not touch upon third-party indemnification rights potentially exercisable under section 711 of the Seller's Guide.

- *Universal I*, relied upon in *First California*, only addressed whether New York's borrowing statute applied for purposes of determining the relevant statute of limitations applicable to LBHI's claims for breaches of contract under the Agreement, and did not analyze or determine whether and when a claim for indemnification accrues under the Agreement. *See generally*, *Universal I*, 12 F. Supp. 3d 1355.

- *Universal II* (Brimmer, J.), which was cited in *Universal III* (Arguello, J.), did in fact consider a claim for indemnification under section 711 of the Seller's Guide and held that LBHI's claim for indemnification under section 711 of the Seller's Guide did not accrue until it made payment to a third party. *Universal II*, 2014 WL 3258409 at *10 ("[a]s a threshold matter, the Court finds that plaintiff's indemnification claim is not time-barred because it did not accrue until August 7, 2008 when plaintiff made Freddie Mac whole for Loan 5128." (citing *McDermott*)).

Accordingly, the cases that underlie the reasoning in *Universal IV*, *First California*, and *Universal III* are either factually distinguishable from the instant case, or are based on an erroneous reading of a prior case. Thus, the Court does not find the conclusions reached in *Universal IV*, *First California*, and *Universal III* persuasive.[6]

Nor does Hometrust fare better in its reliance on *Evergreen*. In *Evergreen*, LBHI asserted that its claim against a loan seller did not accrue until 30 days after LBHI demanded

---

[6] Nor indeed are such cases binding on this Court as a matter of *stare decisis*.

15

payment because LBHI had demanded that the loan seller "indemnify" it for losses stemming from breaches of the representations, warranties, and/or covenants in the Agreement. *See Evergreen*, 793 F. Supp. 2d at 1193. The *Evergreen* court rejected LBHI's argument because it found that LBHI's claim could not be for indemnity because it did not allege it suffered any liability to a third party. *Evergreen*, 793 F. Supp. 2d at 1194 n.2 ("However, despite LBHI's characterization of its claim as one for "indemnity," and despite the imprecise use of this term in the Seller's Guide, LBHI has not alleged it suffered any liability to a third-party. Rather, LBHI's allegations comprise a straightforward claim for damages pertaining to its predecessor's purchase of the Stiffler loan."). Thus, because LBHI had failed to allege liability to a third party and therefore failed to state a claim for indemnification, the *Evergreen* court did not need to analyze the issue presented here, namely whether there is a separate right of action for indemnification under the Agreement that accrues at a later date than a claim for breach of the representations, warranties, and/or covenants in the Agreement. Indeed, under the "consistent line" of New York authority cited by Hometrust, *see e.g.*, *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 967 N.E.2d 1187 (N.Y. 2012), a cause of action for indemnification accrues when a party possesses a legal right to demand payment; here, LBHI possessed no such right until it paid Fannie Mae. Prior to that time, the right belonged only to Fannie Mae.

Having canvassed and analyzed every case in which the Agreement or documents closely akin to the Agreement have been at issue, the Court concludes that *Universal II*, and Judge Brimmer's subsequent decision in *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, No. 13-cv-00090-PAB-MJB, 2014 WL 5069409 (D. Colo. Oct. 9, 2014) ("*Universal V*") contain the most thorough treatment of the issues here presented and finds them persuasive. In *Universal V*, the defendant, Universal Mortgage Co., LLC, argued that Judge Brimmer had erred

16

in finding that LBHI's claim for contractual indemnification was not time-barred in *Universal II*, arguing, as Hometrust does here, that contractual indemnification is nothing more than a remedy under the Agreement. *See* 2014 WL 5069409 at *1. Judge Brimmer was not persuaded by the argument that section 711 of the Seller's Guide is merely a remedial provision. In interpreting section 711 of the Seller's Guide, he reasoned,

> The indemnification provision specifically provides that it is 'in addition to any repurchase and cure obligations of [Universal].' To treat the indemnity and repurchase obligations as identical would render the indemnification provision mere surplusage. But '[a] reading of [a] contract should not render any portion meaningless.' Given that the terms of the indemnification provision state that indemnification is 'in addition to any repurchase and cure obligations,' the indemnification language cannot be ignored by the expedient of mischaracterizing it as a "remedial provision.

*Id*. at *3 (citations omitted).

So too here. The in-depth analysis of the provisions of the Agreement undertaken in *Universal V* harmonizes the seemingly disparate decisions of the various courts on the accrual issue and lays to rest any question that section 711 of the Seller's Guide must be read to afford a third party indemnification rights that accrue only when a payment is made.[7] Moreover, the Court agrees further with *Universal V* and declines to draw a distinction between the indemnification right addressed in *McDermott*, which arose in a tort context, and contractual indemnification for purposes of determining when such claims accrue. *Id*. at *2 ("Although *McDermott* concerned implied indemnification as opposed to contractual indemnification, federal and state courts in New York have repeatedly affirmed the general rule that a cause of action for indemnification occurs when the indemnitee suffers a loss in the context of contractual

---

[7] The Court also notes a string of cases from the District of Minnesota that interpreted loan purchase agreements and seller's guides similar to the Agreement and applied Minnesota law to such agreements. These cases found, in accord with Judge Brimmer, that purchasers had a separate right of indemnification under such agreements that did not accrue until liability to a third party became fixed. *See e.g., Residential Funding Co. v. Embrace Home Loan, Inc.*, 27 F. Supp. 3d 980, 987 (D. Minn. 2014); *Residential Funding Co. v. Academy Mortgage Corp.*, Civ. No. 14-3451 (SRN/JSM), 2014 WL 5860566 at *7 (D. Minn. Nov. 12, 2014).

indemnification.") (footnote and citations omitted). For purposes of determining when the claim accrues, there is no distinction between a claim for implied indemnification arising in a tort context and a claim arising in a contractual context. *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 188 (2d Cir. 2014) ("a claim for **contractual indemnification** only accrues once the indemnitee has suffered a loss, *i.e.*, made a payment") (emphasis added).[8]

## CONCLUSION

LBHI's claim for indemnification under section 711 of the Seller's Guide did not accrue until its liability to a third party was fixed or payment was made. Accordingly, the six-year statute of limitations on LBHI's claim for contractual indemnification did not begin to run until January 22, 2014, the date of the Fannie Mae Settlement. LBHI's claim against Hometrust is not time-barred. Hometrust's Motion to Dismiss is denied.

Dated: May 7, 2015
New York, New York

                                                 /S/ Shelley C. Chapman
                                                 UNITED STATES BANKRUPTCY JUDGE

---

[8] The specter raised by Hometrust of unlimited extensions of the statutory limitations period is unfounded. First, there is no allegation that LBHI purposefully or otherwise refrained from asserting its rights in a timely fashion. And secondly, parties are free to impose a contractual time limitation for the assertion of third-party indemnification claims. *See Cont'l Cas. Co. v. Stronghold Ins. Co.*, 866 F. Supp. 143, 147 n. 2 (S.D.N.Y. 1994) (Sand, J.). Further, as LBHI concedes in its opposition papers, "once an indemnification claim has accrued as a result of the indemnitee's liability to a third party, the indemnitee cannot extend the statute of limitations by stalling in making a demand on the indemnitor." Memorandum of Law of Plaintiff Lehman Brothers Holdings Inc. in Opposition to the Motion of Defendant Hometrust Mortgage Company to Dismiss the Complaint [ECF No. 18] at 10 n. 1; *see also*, *Cont'l Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 21 (2d Cir. 1996).